Opinion
WILLHITE, J.
—The People of the State of California appeal from the order granting the petition for writ of habeas corpus filed by Robert Mark Diaz. We reverse the order, and reinstate Diaz’s prison sentence of six years.
BACKGROUND
This is the third time this case has come before us. As we explained on the first occasion—Diaz’s direct appeal from his judgment of conviction—a Los Angeles Superior Court jury convicted Diaz of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)).[1] He admitted one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and two prior prison terms (§ 667.5, subd. (b)). The superior court sentenced him to a term of six years in prison, including one year for each of his two prior prison *816 terms under section 667.5, subdivision (b). The prior felony conviction underlying one of the section 667.5, subdivision (b) enhancements was a 2009 conviction in San Bernardino Superior Court under former section 666, commonly called petty theft with a prior.
While Diaz’s appeal from the judgment was pending, California voters approved Proposition 47, the “Safe Neighborhoods and Schools Act.” Proposition 47 reduced certain nonserious, nonviolent felonies, including petty theft with a prior, to misdemeanors, and provided a procedure under section 1170.18, subdivision (1) et seq., for persons who have completed a felony sentence for such an offense to apply for reclassification of the conviction as a misdemeanor.
Diaz contended that his 2009 felony conviction of petty theft with a prior would be a misdemeanor if Proposition 47 had been in effect at the time of that offense, and that therefore it could not be the basis of an enhancement of his sentence under section 667.5, subdivision (b). He urged us to declare the conviction a misdemeanor and strike the section 667.5, subdivision (b) enhancement. We held defendant’s contention that Proposition 47 compelled the striking of his section 667.5, subdivision (b) enhancement was premature, because defendant was required first to file an application in the court of conviction under section 1170.18, subdivision (f) to have his 2009 conviction designated as a misdemeanor. (People v. Diaz (2015) 238 Cal.App.4th 1323, 1327-1328 [190 Cal.Rptr.3d 479] (Diaz).) We therefore affirmed the judgment.
Following his appeal, Diaz filed a petition under section 1170.18, subdivision (f) in the San Bernardino Superior Court to redesignate his 2009 conviction of petty theft with a prior as a misdemeanor. The San Bernardino court granted the petition, designated the crime as a misdemeanor, and resentenced defendant to 180 days in county jail with credit for that time.
Defendant then filed a petition for writ of habeas corpus in this court requesting that his section 667.5, subdivision (b) enhancement based on the 2009 conviction be stricken. We issued an order to show cause, returnable in the Los Angeles Superior Court, why the section 667.5, subdivision (b) prior should not be stricken based on the redesignation of the 2009 conviction. After briefing and argument, the superior court granted the petition. The court struck the section 667.5, subdivision (b) prior based on the 2009 conviction, resentenced defendant to five years in state prison, and, based on his presentence credits for 2,276 days, ordered him released from custody. The People appeal from the court’s grant of the habeas corpus petition.
*817 DISCUSSION
The People contend that the reclassification of defendant’s 2009 felony conviction of petty theft with a prior as a misdemeanor, which occurred after his original sentence, does not preclude its use to support his section 667.5, subdivision (b) enhancement. We agree. The redesignation under Proposition 47 of a prior felony conviction to a misdemeanor operates prospectively, from the date of the redesignation forward, and not retroactively, as if the conviction always had been a misdemeanor.
The Supreme Court has granted review in several cases that have reached the same conclusion. (See, e.g., People v. Jones (2016) 1 Cal.App.5th 221 [204 Cal.Rptr.3d 369], review granted Sept. 14, 2016, S235901; People v. Valenzuela (2016) 244 Cal.App.4th 692 [198 Cal.Rptr.3d 276], review granted Mar. 30, 2016, S232900; People v. Williams (2016) 245 Cal.App.4th 458 [199 Cal.Rptr.3d 755], review granted May 11, 2016, S233539; People v. Carrea (2016) 244 Cal.App.4th 966 [198 Cal.Rptr.3d 753], review granted Apr. 27, 2016, S233011; People v. Ruff (2016) 244 Cal.App.4th 935 [198 Cal.Rptr.3d 704], review granted May 11, 2016, S233201.) We align ourselves with the reasoning of those decisions, and use it here.[2]
*818 I. Statutory Interpretation
“When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative’s language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters’ intent and understanding of a ballot measure.” (People v. Superior Court (Pearson) (2010) 48 Cal.4th 564, 571 [107 Cal.Rptr.3d 265, 227 P.3d 858].)
Although Proposition 47 does not expressly so state, its language clearly implies that it has no retroactive effect. Proposition 47 creates two separate mechanisms for redesignating offenses. The first applies to a defendant currently “serving a sentence for [that] conviction” and allows for the “recall” of that felony sentence and for resentencing contingent upon a finding that the redesignation will not pose an “unreasonable risk that the [defendant] will commit a new violent felony within the meaning of’ section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subds. (a), (b) & (c).) The second applies to a defendant who has “completed his or her sentence” and allows for re-“designat[ion]” of that offense as a misdemeanor. {Id., subds. (1) & (g).) There is no mechanism for resentencing on a felony not affected by Proposition 47 merely because an offense underlying one of its prior conviction enhancements is so affected. Moreover, Proposition 47 expressly provides that the two mechanisms it creates are exhaustive: “Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this act.” (§ 1170.18, subd. (n).)
Moreover, Proposition 47 borrows language from section 17 that has a well-defined meaning and that does not grant an offense’s redesignation as a misdemeanor retroactive effect. Proposition 47 expressly provides that “[a]ny felony conviction that is recalled and resentenced” under either of the two statutory mechanisms “shall be considered a misdemeanor for all purposes.” (§ 1170.18, subd. (k).) This language is identical to the language used in section 17 to describe the effect of a judicial declaration that a wobbler offense—which is punishable as a felony until designated a misdemeanor—is to be considered a misdemeanor. (§ 17, subd. (b)(3) [where a crime is a wobbler, “it is a misdemeanor for all purposes ... [¶] ... [¶] [w]hen ... the court declares the offense to be a misdemeanor.”].) “[W]hen a wobbler is reduced to a misdemeanor [under section 17], the offense thereafter is *819 deemed a ‘misdemeanor for all purposes’ ” (People v. Park (2013) 56 Cal.4th 782, 795 [156 Cal.Rptr.3d 307, 299 P.3d 1263], italics added), meaning from that point on. Because “identical language appearing in separate statutory provisions should receive the same interpretation when the statutes cover the same or analogous subject matter” (People v. Cornett (2012) 53 Cal.4th 1261, 1269, fn. 6 [139 Cal.Rptr.3d 837, 274 P.3d 456]), and because Proposition 47 and section 17 both address the effect to be given the redesignation of a felony as a misdemeanor, we are presumptively obligated to construe the phrase “misdemeanor for all purposes” under Proposition 47 to mean the same as it does under section 17—namely, that a felony offense redesignated as a misdemeanor under Proposition 47 retains its character as a felony prior to its redesignation, and is treated as a misdemeanor only after the time of redesignation.
The recent decision in People v. Abdallah (2016) 246 Cal.App.4th 736 [201 Cal.Rptr.3d 198] (Abdallah), supports this conclusion. In Abdallah, Proposition 47 was enacted and became effective between the date of the defendant’s conviction and sentence. Before sentencing, the trial court redes-ignated the defendant’s prior 2011 conviction of possession of methamphet-antine as a misdemeanor under Proposition 47. The court then sentenced defendant to a section 667.5, subdivision (b) enhancement based in part on that prior conviction. (Abdallah, at pp. 740-742.) On appeal, the issue presented was “whether, at the time the court sentenced [the defendant] in the present case, [his] original felony conviction in the 2011 case satisfied the fourth requirement of section 667.5, subdivision (b) [that he ‘did not remain free for five years of both prison custody and the commission of a new offense resulting in a felony conviction (People v. Tenner (1993) 6 Cal.4th 559, 563 [24 Cal.Rptr.2d 840, 862 P.2d 840], italics added)], or whether, once the court resentenced [him] on his 2011 conviction, he no longer had committed an offense that ‘result[ed] in a felony conviction’ within five years of release on parole or discharge from custody for a prior felony conviction (in this case, the 2002 conviction).” (Abdallah, supra, 246 Cal.App.4th at pp. 744-745.)
The Court of Appeal held that the trial court’s redesignation of the 2011 conviction as a misdemeanor precluded its use for the court’s later imposition of a section 667.5, subdivision (b) enhancement. The court reasoned that the “for all purposes” language of Proposition 47 has the same meaning as the identical language in section 17, subdivision (b), which applies to reduction of an alternative felony/misdemeanor (“wobbler”) offense to a misdemeanor. Reasoning by analogy from Park, supra, 56 Cal.4th 782, which held that reduction of a wobbler conviction to a misdemeanor under section 17, subdivision (b) precluded its use in a later prosecution to enhance the sentence as a prior serious felony conviction under section 667, subdivision (a), the Court of Appeal concluded: “The same logic applies to sections 667.5, *820 subdivision (b), and 1170.18, subdivision (k). Section 667.5, subdivision (b), excludes from the prior prison term enhancement a defendant who has neither committed ‘an offense which results in a felony conviction’ nor been subject to ‘prison custody or the imposition of a term of jail custody ... or any felony sentence that is not suspended’ within five years of release on parole or official discharge from another felony conviction resulting in the defendant’s incarceration. Once the trial court recalled [the defendant’s] 2011 felony sentence and resentenced him to a misdemeanor, section 1170.18, subdivision (k), reclassified that conviction as a misdemeanor ‘for all purposes.’ [Citation.] . . . Thus, the trial court erred by imposing the one-year sentence enhancement under section 667.5, subdivision (b).” (Abdallah, supra, 246 Cal.App.4th at p. 746.)
Significantly, the court distinguished “recent cases holding that Proposition 47 does not apply retroactively to redesignate predicate offenses as misdemeanors for purposes of imposing sentencing enhancements where the original sentence was imposed before the enactment of Proposition 47. [Citations.] Indeed, those cases suggest that where, as here, a prior conviction is no longer a felony at the time the court imposes a sentence enhancement under section 667.5, Proposition 47 precludes the court from using that conviction as a felony merely because it was a felony at the time the defendant committed the offense.” (Abdallah, supra, 246 Cal.App.4th at p. 747.)
We note as well that the purposes of Proposition 47 suggest that it does not operate retroactively. Sections 2 and 3 of Proposition 47 state the chief aims: “ensuring] that prison spending is focused on violent and serious offenses,” “maximizing] alternatives for nonserious, nonviolent crime,” and “investing] the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment.” (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, §§ 2, 3, p. 70.)
Also, Proposition 47 does not rebut the statutory presumption that amendments to the Penal Code operate prospectively. Section 3 provides that “[n]o part of [the Penal Code] is retroactive, unless expressly so declared.” Generally, only an express legislative declaration of retroactivity or “ ‘a clear and compelling implication’ ” of such will suffice. (People v. Alford (2007) 42 Cal.4th 749, 753 [68 Cal.Rptr.3d 310, 171 P.3d 32].) Proposition 47 contains neither an express declaration nor a clear and compelling implication that a Proposition 47 redesignation should be given retroactive effect. To the contrary, as we have discussed, the language and purposes of the enactment show that reclassification of an offense should be give only prospective effect.
Finally, nothing in section 667.5, subdivision (b) suggests that Diaz is entitled to resentencing. Section 667.5, subdivision (b) provides in relevant *821 part that a “court shall,” when imposing a sentence of imprisonment on any felony, “impose a[n additional, consecutive] one-year term for each prior separate prison term or county jail term ... for any felony.” (§ 667.5, subd. (b).) In the past, the Supreme Court commented that “667.5(b) is aimed primarily at the underlying felony conviction, and only secondarily, and as an indicium of the felony’s seriousness, at the prior prison term.” (People v. Prather (1990) 50 Cal.3d 428, 440 [267 Cal.Rptr. 605, 787 P.2d 1012].) But the court has since taken a different view, noting that “[t]he purpose of [this] enhancement is ‘to punish individuals’ who have shown that they are ‘ “hardened criminal[s] who [are] undeterred by the fear of prison.” ’ ” (In re Preston (2009) 176 Cal.App.4th 1109, 1115 [98 Cal.Rptr.3d 340], quoting People v. Jones (1993) 5 Cal.4th 1142, 1148 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; see People v. Fielder (2004) 114 Cal.App.4th 1221, 1232 [8 Cal.Rptr.3d 247].) Thus, the enhancement is designed to provide an extra deterrent for criminals who were not deterred by prior terms of imprisonment in prison or in county jail under lengthier felony sentences. The critical factor is thus the fact of imprisonment, not the designation of the offense that led to it.
II. Diaz’s Authorities
The decisions on which Diaz primarily relies—People v. Flores, supra, 92 Cal.App.3d 461 (Flores), In re Estrada, supra, 63 Cal.2d 740 (Estrada), and People v. Conley (2016) 63 Cal.4th 646 [203 Cal.Rptr.3d 622, 373 P.3d 435] (Conley)—do not compel the conclusion that reclassification of an offense under Proposition 47 should be given retroactive effect.
In Flores, the defendant sought to overturn a long-final marijuana possession conviction used to enhance a later drug-related conviction on the basis of subsequent legislation reducing the penalty for marijuana possession crimes and mandating that records of arrests and convictions pertaining to those crimes be destroyed. (Flores, supra, 92 Cal.App.3d at pp. 471-472.) Flores held the defendant was entitled to the relief. (Id. at pp. 473-474.) The court concluded that the Legislature’s destruction-of-court-records mandate evinced a clear intent that those records (and the convictions they recorded) not be used to enhance future sentences. (Ibid.) No such clear intent exists with Proposition 47.
Diaz’s reliance on Estrada fares no better. “Estrada represents ‘an important, contextually specific qualification to the ordinary presumption that statutes operate prospectively: When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the *822 statute’s operative date. . . .’ [Citation.]” (People v. Hajek and Vo (2014) 58 Cal.4th 1144, 1195-1196 [171 Cal.Rptr.3d 234, 324 P.3d 88] (Hajek); see People v. Brown (2012) 54 Cal.4th 314, 324 [142 Cal.Rptr.3d 824, 278 P.3d 1182] [Estrada reflects a ‘“reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments”]; Estrada, supra, 63 Cal.2d at p. 744 [‘“[i]f the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final, then ... it, and not the old statute in effect when the prohibited act was committed, applies.”].) In other words, the Estrada presumption holds that when a new statute lessens the punishment for a ‘“particular criminal offense” (Hajek, supra, 58 Cal.4th at p. 1195) or a ‘“prohibited act” (Estrada, supra, 63 Cal.2d at p. 744), it is presumed that the new statute applies to all nonfinal judgments of conviction for that ‘“particular criminal offense” or ‘“prohibited act.” Such a judgment is ‘“final” for purposes of the Estrada rule when courts on direct review can no longer provide a remedy, including the time within which to petition to the United States Supreme Court for writ of certiorari. (In re Pine (1977) 66 Cal.App.3d 593, 594 [136 Cal.Rptr. 718].)
Here, Proposition 47 did not reduce the punishment for the offense (felon in possession of a firearm) Diaz was convicted of in the present case and for which he was serving his sentence until the grant of habeas corpus relief which is the subject of this appeal. Rather, the ‘“particular criminal offense” (Hajek, supra, 58 Cal.4th at p. 1195) or ‘“prohibited act” (Estrada, supra, 63 Cal.2d at p. 744) for which Proposition 47 reduced the punishment is petty with a prior, the offense of which Diaz was convicted in 2009 and which forms the basis of his prison enhancement. But Diaz’s 2009 judgment of conviction for petty with a prior is final. Thus, the Estrada presumption simply does not apply. Also, as we have already explained, we find nothing in Proposition 47 to suggest that it applies to preclude using a prior conviction that was final before Proposition 47’s effective date as the basis for an enhancement of the sentence for another crime that is not affected by Proposition 47. In our view, the redesignation under Proposition 47 of a prior felony conviction to a misdemeanor operates prospectively, from the date of the redesignation forward, and not retroactively, as if the conviction always had been a misdemeanor.
In the recent decision of People v. Evans (2016) 6 Cal.App.5th 894 [211 Cal.Rptr.3d 761], the court took a different view of Estrada and Proposition 47 in the context of a defendant who had obtained a reclassification of the prior offense underlying his section 667.5, subdivision (b) enhancement after he was sentenced, but while his appeal from the judgment on appeal was pending. In that situation, the court in Evans reasoned that ‘“Proposition 47 provided a means for [the defendant] to mitigate punishment, and he successfully took advantage of that procedure before his sentence became final. *823 Evans’s request that we correct his sentence on appeal therefore does not seek to apply Proposition 47 in a retroactive manner not approved by the voters.” (Evans, at p. 904, fn. omitted.) In a footnote, without discussion, the court stated: ‘“The People contend Estrada’s holding does not apply here because the sentence for Evans’s 2007 felony drug offense [the basis of the section 667.5, subdivision (b) prior] has long been final. The People misunderstand the finality aspect of the Estrada analysis. The key date is when the sentence including the enhancement becomes final (i.e., Evans’s 2015 sentence), not when the sentence for the offense supporting the enhancement became final.” (People v. Evans, supra, 6 Cal.App.5th at p. 904, fn. 3.)
We disagree with Evans’ interpretation of Estrada and its effect on Proposition 47. As we have explained, the Estrada presumption has a limited scope: when a new statute lessens the punishment for a ‘“particular criminal offense” (Hajek, supra, 58 Cal.4th at p. 1195) or a ‘“prohibited act” (Estrada, supra, 63 Cal.2d at p. 744), it is presumed that the new statute applies to all nonfinal judgments of conviction for that “particular criminal offense” or “prohibited act.” As we have also explained, neither the Estrada presumption, nor a proper interpretation of Proposition 47, precludes using Diaz’s 2009 conviction, which was final before Proposition 47’s effective date, as the basis for an enhancement of the sentence for his conviction in the present case of felon in possession of a firearm, which was not affected by Proposition 47.
In addition, we note that Evans is factually distinguishable. Unlike the defendant in Evans, Diaz did not obtain reclassification of his 2009 conviction while his direct appeal was pending. He did so after his judgment was affirmed on appeal, and he then filed a filed a petition for writ of habeas corpus seeking to have the prison enhancement stricken.
Diaz argues that the discussion of the Estrada rule in Conley supports application of the Estrada rule to his case. We disagree. Conley considered Estrada in the context of the Three Strikes Reform Act of 2012 (Reform Act). “The Reform Act changed the sentence prescribed for a third strike defendant whose current offense is not a serious or violent felony. [Citation.] Under the Reform Act’s revised penalty provisions, many third strike defendants are excepted from the provision imposing an indeterminate life sentence [citation] and are instead sentenced in the same way as second strike defendants [citation]: that is, they receive a term equal to ‘twice the term otherwise provided as punishment for the current felony conviction’ [citation], A defendant does not qualify for this ameliorative change, however, if [it is pleaded and proven that his current offense is one of certain offenses listed in section 1170.12, subdivision (c)(2)(C)(i)-(iv)]. . . . [¶] In the Reform Act, the voters also established a procedure for ‘persons presently serving an indeterminate term of imprisonment’ under the prior version of the Three Strikes law *824 to seek resentencing under the Reform Act’s revised penalty structure. (. . . § 1170.126, subd. (a).) Under section 1170.126, ‘within two years after the effective date of the act. . . or at a later date upon a showing of good cause,’ such persons can file a petition for a recall of sentence before the trial court that entered the judgment of conviction. {Id., subd. (b).) If the petitioner would have qualified for a shorter sentence under the Reform Act version of the law, taking into consideration the disqualifying factors (§ 1170.126, subds. (e), (f)), section 1170.126 provides that he ‘shall be resentenced pursuant to [the Reform Act] unless the court, in its discretion, determines that resentenc-ing the petitioner would pose an unreasonable risk of danger to public safety’ {id., subd. (f)).” (Conley, supra, 63 Cal.4th at pp. 652-654.)
In Conley, while the defendant’s appeal from his three strikes judgment was pending, the voters enacted the Reform Act (eff. Nov. 7, 2012). The defendant in Conley was “ ‘presently serving an indeterminate term of imprisonment’ under the prior version of the Three Strikes law,” and thus ‘“under the plain language of the Reform Act, . . . [was] entitled to seek the benefit of the Act’s reduced penalties by filing a petition to recall his sentence and requesting resentencing under the new law.” (Conley, supra, 63 Cal.4th at p. 653, 655.) He contended, however, that under Estrada, ‘“he and others whose judgments were not yet final [on appeal] as of the effective date of the Reform Act are entitled to automatic resentencing under the revised penalty provisions of the Act, without the need to file a recall petition under Penal Code section 1170.126, and thus without regard to whether the trial court determines that resentencing the defendant would pose ‘an unreasonable risk of danger to public safety.’ ” (Id. at pp. 655-656.)
The court reasoned that the Reform Act expressly operates retroactively (‘“[s]ection 1170.126 creates a special mechanism that entitles all persons ‘presently serving’ indeterminate life terms imposed under the prior law to seek resentencing under the new law” regardless of whether that sentence is final). (Conley, supra, 63 Cal.4th at p. 657.) But because the Reform Act created a ‘“special mechanism for application of the new lesser punishment to persons who have previously been sentenced, and . . . expressly ma[de] retroactive application of the lesser punishment contingent on a court’s evaluation of the defendant’s dangerousness,” the Estrada presumption of retroactivity did not apply to require automatic resentencing. (Conley, supra, at p. 658.) ‘“[T]o confer an automatic entitlement to resentencing under these circumstances would undermine the apparent intent of the electorate that approved section 1170.126: to create broad access to resentencing for prisoners previously sentenced to indeterminate life terms, but subject to judicial evaluation of the impact of resentencing on public safety, based on the prisoner’s criminal history, record of incarceration, and other factors.” (Id. at p. 659.)
*825 Nothing in Conley suggests that the Estrada presumption gives Proposition 47 retroactive effect. Conley recognized that ‘“[o]ur cases do not ‘dictate to legislative drafters the forms in which laws must be written’ to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require ‘that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.’ [Citations.]” (Conley, supra, 63 Cal.4th at pp. 656-657; id. at p. 661.) As we have discussed, such intent is clearly manifested in Proposition 47. Indeed, that conclusion is buttressed by Conley’s analysis. Conley relied on the specifics of the resentencing procedures created by the Reform Act to rebut the Estrada presumption. Here, we do the same. As we have noted, Proposition 47 creates two separate mechanisms for redesignating offenses. One applies to defendants currently serving a sentence for that offense and permits ‘“recall” of that felony sentence and resentencing contingent upon a finding that the redesignation will not pose an “unreasonable risk that the [defendant] will commit a new violent felony within the meaning of’ section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subds. (a), (b), (c).) The other applies to a defendant, such as Diaz, who has “completed his or her sentence” and allows for re-“designat[ion]” of that offense as a misdemeanor. {Id., subds. (f), (g).) Proposition 47 has no mechanism for doing what Diaz seeks by his petition for writ of habeas corpus: resentencing merely because an offense underlying one of his prior conviction enhancements (for which he has already served his sentence) has been redesignated. Moreover, Proposition 47 expressly provides that the two mechanisms it creates are exhaustive: “Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this act.” (§ 1170.18, subd. (n).) By omitting any procedure that would permit Diaz’s resentencing, and by providing that its mechanisms are exhaustive, Proposition 47 clearly signals that it does not have the retroactive effect Diaz seeks.
III. Equal Protection
Diaz argues that not striking his section 667.5, subdivision (b) enhancement violates equal protection. As we understand it, he argues that refusing to give a Proposition 47 redesignation retroactive effect creates two classes of defendants: (1) those sentenced now, who are able to avoid enhancements based on prior felony or wobbler convictions (because the redesignations they obtain on those prior convictions apply prospectively); and (2) those sentenced in the past, who are unable to avoid enhancements based on prior felony or wobbler convictions (because the redesignations they obtain on those prior convictions do not apply retroactively). However, the distinction between these two classes is whether the defendants were able to seek redesignation before or after the current sentence was imposed, which in turn is a function of the date Proposition 47 took effect. It is well settled that *826 “ ‘[a] reduction of sentences only prospectively from the date a new sentencing statute takes effect is not a denial of equal protection.’ ” (People v. Floyd (2003) 31 Cal.4th 179, 189 [1 Cal.Rptr.3d 885, 72 P.3d 820]; see also People v. Smith (2015) 234 Cal.App.4th 1460, 1468 [185 Cal.Rptr.3d 68] [“ ‘a statute ameliorating punishment for particular offenses may be made prospective only without offending equal protection’ ”].) This result makes sense because a classification defined by the date an ameliorative statute takes effect rationally furthers the state’s legitimate interest in “assuring] that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.” (In re Kapperman (1974) 11 Cal.3d 542, 546 [114 Cal.Rptr. 97, 522 P.2d 657].)
DISPOSITION
The orders granting the petition for writ of habeas corpus, striking Diaz’s section 667.5, subdivision (b) enhancement, and resentencing him to five years in state prison are reversed. His original sentence of six years in state prison is reinstated.
Collins, J., concurred.

 Undesignated section references are to the Penal Code.

 To the extent Diaz argues that our decision in his prior appeal and our issuance of an order to show cause on his current petition for writ of habeas corpus “implicitly recognize [d] that Proposition 47 applies to [his] sentence enhancement and requires that it be stricken,” he is mistaken. In our prior opinion, we concluded that in light of the plain meaning of section 1170.18, the reasoning of People v. Flores (1979) 92 Cal.App.3d 461 [154 Cal.Rptr. 851], on which Diaz relied, did not suggest that we should strike defendant’s section 667.5, subdivision (b) prior, and “[w]e expressfed] no opinion whether Flores’s reasoning suggested] that a felony conviction which has been designated a misdemeanor under section 1170.18, subdivision (k) can be used to support a section 667.5, subdivision (b) enhancement.” (Diaz, supra, 238 Cal.App.4th at p. 1335.) Nor did we express an opinion on whether In re Estrada (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], another decision on which Diaz relied, or principles of equal protection, would require the striking of Diaz’s section 667.5, subdivision (b) enhancement upon the reclassification of the supporting conviction as a misdemeanor. (Diaz, supra, 238 Cal.App.4th at p. 1336 [“Estrada simply does not apply in the procedural posture of defendant’s case,” and “even if Estrada were construed to apply to the procedural posture of this case, it would not require us to reduce defendant’s 2009 conviction to a misdemeanor”]; id, at p. 1337 [“whatever merit [Diaz’s] equal protection argument might have for someone whose prior conviction has been designated a misdemeanor, the argument does not apply here”].)
Further, our issuance of an order to show cause on his habeas corpus petition was not an implicit determination on the ultimate merits of the petition. It simply reflected a determination that Diaz made a prima facie claim for relief that was not procedurally haired. The issuance of an order to show cause “is largely procedural. It ‘does not decide the issues and cannot itself require the final release of the petitioner.’ [Citation.] Rather, the writ [or order to show cause] commands the person having custody of the petitioner to bring the petitioner ‘before the court or judge before whom the writ is returnable’ [citation] . . . and to submit a written return justifying the petitioner’s imprisonment or other restraint on the petitioner’s liberty.” (People v. Romero (1994) 8 Cal.4th 728, 738 [35 Cal.Rptr.2d 270, 883 P.2d 388], fn. omitted.)